1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT

8                       SOUTHERN DISTRICT OF CALIFORNIA

9

10   JOYCE WALKER, KIM BRUCE              )   Case No. 11-CV-2531-BTM (JMA)
     HOWLETT, and MURIEL SPOONER, on      )
11   behalf of themselves and all others  )   **ORDER FOLLOWING DISCOVERY**
     similarly situated,                  )   **CONFERENCE, DENYING MOTION**
12                                         )   **FOR ORDER TO SHOW CAUSE WHY**
                          Petitioners,     )   **ASSET MARKETING SYSTEMS**
13                                         )   **INSURANCE SERVICES LLC SHOULD**
     v.                                    )   **NOT BE HELD IN CONTEMPT [Doc.**
14                                         )   **Nos. 1, 2], AND DENYING REQUEST**
     ASSET MARKETING SYSTEMS               )   **FOR EVIDENTIARY HEARING [Doc.**
15   INSURANCE SERVICES LLC, a             )   **No. 13]**
     California corporation,               )
16                                         )
                          Respondent.      )
17   ─────────────────────────────        )

18

19       Before the Court is a Motion for Order to Show Cause Why Asset Marketing

20   Systems Insurance Services LLC ("AMS") should not be held in contempt for violation of

21   a subpoena to testify at a deposition and produce documents filed by Petitioners Joyce

22   Walker, Kim Bruce Howlett, and Muriel Spooner, on behalf of themselves and all others

23   similarly situated ("Petitioners") [Doc. Nos. 1, 2], and a request by Petitioners for an

24   evidentiary hearing on AMS's alleged contempt [Doc. No. 13 at 10].[1]

25       Based upon the filings and submissions presented in this case, and the

26   representations and arguments made during discovery conferences held on February 9,

27

28       [1]The page number references herein refer to the page numbers applied by the Court's
     electronic case filing system.

2012 and March 7, 2012,[2] and for the reasons set forth below, Petitioners' motion for an order to show cause why AMS should not be held in contempt, and request for an evidentiary hearing on AMS's alleged contempt, are **DENIED**.

**I.    Background**

This matter arises out of a subpoena for testimony and production of documents served by Petitioners upon AMS on July 1, 2011 in connection with an action pending in the Central District of California, <u>Walker, et al. v. Life Insurance Company of the Southwest</u>, Case Number 10-CV-9198-JVS (RNBx), a putative class action in which the plaintiffs (Petitioners here) allege that Defendant Life Insurance Company of the Southwest ("LSW") engaged in fraud and unfair competition in the sale of its indexed universal life insurance policies.  AMS was involved in the administration of the plaintiffs' policies and in LSW's sale and administration of the indexed universal life insurance policies that are at issue in that litigation.  AMS's Director of Suitability and Compliance & Legal Affairs, Robert Seawright, responded to the subpoena by sending an email to Petitioners' counsel, Mr. Foster, on July 20, 2011, advising that no one from AMS would be available to respond to the subpoena (which set a deposition date of July 29, 2011 and which contained 44 document requests) and that "as drafted, the document request is both overly broad and unduly burdensome."  Foster Decl. in Supp. of Mot., Ex. C [Doc. No. 1-6 at 2-3].

On November 1, 2011, Petitioners filed the instant motion for an order to show cause why AMS should not be held in contempt for violating the subpoena, in which they requested that the Court find AMS in contempt, order AMS to produce all responsive documents, and grant fees and costs incurred to enforce compliance with the subpoena.  Doc. No. 1. On November 2, 2011, the Court issued an order setting a hearing on Petitioners' motion for December 19, 2011.  Doc. No. 3.  On December 5,

---

[2]Appearing at both discovery conferences were Jacob Foster, Esq. on behalf of Petitioners, Robert Seawright, Director, Suitability, Compliance & Legal Affairs, on behalf of Respondent AMS, and Timothy Perla, Esq. and James Lux, Esq. on behalf of the defendant in the underlying matter, Life Insurance Company of the Southwest.

11cv2531

2012, Petitioners and AMS filed a joint motion requesting that the hearing be continued

as AMS had made a partial production of documents on November 29, 2011, and the

parties had met and conferred regarding a further production.  Doc. No. 5.  The Court

continued the hearing to January 26, 2012.  Doc. No. 6.  On January 3, 2012,

Petitioners filed a brief arguing that although AMS had made a second production on

December 15, 2011, the Court should order AMS to provide written clarification

regarding the scope of its document production, as the production to date appeared to

be deficient, and to produce all documents responsive to the subpoena which were not

previously produced.  Doc. No. 7 at 8.  Petitioners further argued that AMS should be

found in contempt because it did not timely respond to the subpoena and did not file any

papers in opposition to Petitioners' motion.  Id. at 5-7.  Petitioners dropped their request

for fees and costs expended in seeking AMS's compliance with the subpoena, but

reserved the right to seek them if warranted in the future.  Id. at 6 & n.2.

On January 13, 2012, the Court ordered AMS to produce all responsive

documents not previously produced, and to provide either verified supplemental

responses or a sworn declaration clarifying the scope of its production by January 24,

2012, and continued the hearing on Petitioners' motion to February 9, 2012.  Doc. No.

8.  Petitioners filed a status report on February 2, 2012 in which they advised that AMS

had not complied with the Court's January 13, 2012 order and that Mr. Seawright had

instead sent an email on January 25, 2012.  Doc. No. 9.  According to the email, the

documents produced by AMS to Petitioners in its first and second productions of

documents (November 29, 2011 and December 15, 2011, respectively) were located

through Seawright's search of AMS's servers and hard copy files.  Foster Decl. in Supp.

of Status Report, Ex. A [Doc. No. 9-2 at 2].  Seawright explained further:

> AMS has no filing or data retention system for communications with
> agents that is able to be broken down by carrier.[3]  Moreover, since
> illustrations are often provided from multiple carriers and not necessarily
> referenced by carrier, we have no way of ascertaining which emails
> contain LSW illustrations or reference LSW IUL [indexed universal life

---

[3]AMS conducted business with other carriers in addition to LSW.

insurance policies].[4]  Hard copies are not retained.  I am open to any
suggestion you may have for how to get you the information you wish, but
reviewing every email sent to an LSW agent to see if LSW is mentioned or
an LSW illustration is attached seems overly burdensome to me . . . .
Again, I want to comply with any reasonable request and am open to any
suggestion you may have for how the material (or a representative sample
thereof) you are after can be culled from our digital archives efficiently.
Please let me know how you would like to proceed in this regard.

Id.

Because the parties appeared to be cooperating, the Court converted the

February 9, 2012 hearing on Petitioners' motion to a discovery conference.  Following

the discovery conference, the Court ordered AMS to conduct a subsequent search of its

servers utilizing search terms agreed upon by AMS and Petitioners, to produce all

responsive documents not previously produced by February 17, 2012, and to provide

either verified supplemental responses or a sworn declaration clarifying, with respect to

each of the 44 document requests contained in the subpoena, (1) whether all

responsive documents had been produced, (2) whether any responsive documents had

been withheld, and if so, on what basis they had been withheld, and (3) if applicable,

whether no documents existed, by February 24, 2012.  Doc. No. 12.

On March 5, 2012, Petitioners filed a status report advising that AMS had failed

to comply with the Court's February 9, 2012 order as it had not produced any further

documents to Petitioners and had not provided verified supplemental responses or a

sworn declaration.  Doc. No. 13 at 2.  Petitioners stated that the day before AMS's

production was due, AMS suddenly informed them that it would not produce the

documents until Petitioners paid its costs of production, and until counsel for LSW could

cull documents as to which LSW asserted a privilege from the extensive document

cache generated by the search of AMS's servers.  Doc. No. 13 at 3.  In an effort to

obtain the documents as quickly as possible, Petitioners paid $8,850.00 to AMS's

forensic computer vendor, LiveOffice, on March 1, 2012, but reserved the right to

request that the Court order AMS to bear the cost of production.  Id. at 3.  Petitioners

[4]These, among many other documents, were requested in the subpoena.

disputed that LSW could properly withhold any documents as privileged as it had failed to assert any privilege objections, timely or otherwise, in response to the subpoena. Id. at 8. LSW, for its part, countered that because "Petitioners were insisting that [AMS] produce virtually its entire email archive . . . using dozens of broad search terms . . . as opposed to a typical review for materials that were actually responsive to Petitioners' subpoena or relevant to the underlying litigation," LSW notified AMS that the search of its servers could result in the production of documents constituting LSW's attorney-client privileged communications or attorney work product. LSW Mar. 5, 2012 Status Report. LSW stated that it had worked with AMS to conduct targeted searches to locate these documents and was in the process of having the documents (totaling 184 emails) extracted from the cache of documents located in the search of AMS's servers. Id.

During the March 7, 2012 discovery conference, Mr. Seawright represented to the Court that the cost estimates provided by AMS's vendors to extract the 184 emails from the cache of documents was in the tens of thousands of dollars. LSW's counsel informed him that its vendor, D4, could extract the emails for a much lower cost, and that LSW would bear those costs. Therefore, Mr. Seawright advised he had sent a copy of the document cache via UPS directly to D4 (not to LSW) and had retained a drive containing the original document cache. LSW's counsel, James Lux, represented to the Court that once the 184 emails to which LSW asserts a privilege claim are extracted by D4, the remaining cache would be sent directly by D4 to Petitioners, without LSW ever having access to the cache.

**II.    Orders Regarding Document Production**

1.    AMS, through LSW's computer forensics vendor (D4), shall produce to Petitioners the cache of documents located by the February 2012 search of AMS's servers utilizing the search terms agreed upon by Petitioners and AMS, minus the 184 documents extracted by LSW's vendor pursuant to LSW's claims of privilege, by no later than March 14, 2012. AMS shall maintain the computer drive containing the original cache of documents (including the 184 emails to be extracted by LSW's vendor)

11cv2531

1  located by the February 2012 search of its servers until further order of the Court.

2      2.     LSW shall provide a privilege log to Petitioners relating to the 184

3  documents extracted from the cache of documents located by the February 2012

4  search of AMS's servers to which LSW asserts a claim of privilege by no later than

5  March 9, 2012.  The Court presently makes no finding as to the timeliness of LSW's

6  privilege assertion or as to waiver of any privilege claim by LSW.  If a dispute arises,

7  after Petitioners have reviewed LSW's privilege log, concerning the documents withheld

8  from production by LSW, counsel for Petitioners and LSW shall follow the undersigned's

9  Chambers Rules regarding resolution of discovery disputes.

10      3.     AMS shall comply with the Court's January 13, 2012 and February 9, 2012

11  orders by providing verified supplemental responses or a sworn declaration clarifying,

12  with respect to each of the forty-four (44) document requests contained in the

13  subpoena, (1) whether all responsive documents have been produced, (2) whether any

14  responsive documents have been withheld, and if so, on what basis they have been

15  withheld, and (3) if applicable, whether no documents exist, by March 14, 2012.

16  **III.  Discussion Regarding Contempt**

17      The scope of Petitioners' subpoena was broad, containing 44 separate document

18  requests.  Although AMS did not timely object to the subpoena, as objections must be

19  served before the earlier of the time specified for compliance or fourteen (14) days after

20  the subpoena is served (see Fed. R. Civ. P. 45(c)(2)(B)), and thus were due by July 15,

21  2011, it is inaccurate to say that it *never* objected to the subpoena, as it did object via

22  email on July 20, 2011 that the document requests in the subpoena were overly broad

23  and unduly burdensome.  Foster Decl. in Supp. of Mot., Ex. C [Doc. No. 1-6 at 2-3].

24  AMS's failure to serve timely objections to the subpoena did not give Petitioners the

25  right to unduly burden AMS, as Rule 45 imposes a duty upon a party or attorney serving

26  a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a

27  person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).

28      Notwithstanding the requirements of Rule 45, a substantial burden was placed on

11cv2531

AMS in responding to Petitioners' subpoena.  Mr. Seawright, on behalf of AMS, which, as bears reiterating here, is a *non-party* to the underlying litigation, has represented to the Court that AMS is a small company with approximately 50 employees, that he is a part-time employee, and that he does not have a staff.  Mr. Seawright spent many hours conducting and directing multiple searches for responsive documents, communicating with counsel for Petitioners and LSW, reviewing Petitioners' filings, and participating in two discovery conferences before the Court.  AMS's February 2012 search of its servers, using two full pages of very broad search terms agreed upon by Petitioners and AMS (see Foster Decl. in Supp. of Mar. 5, 2012 Status Report, Ex. A [Doc. No. 13-2 at 2-4]), located over one million emails containing the search terms, all of which, save 184 emails withheld from production at the request of LSW, not AMS, will be produced to Petitioners forthwith.

The Court finds no contempt on AMS's part and sees no need to conduct an evidentiary hearing on this issue.  The parties, with the assistance of the Court, are nearly at a resolution of the issues arising out of Petitioners' subpoena to AMS. Although the document production took longer than would have been ideal, and longer than anticipated, and although AMS could have been more diligent in responding to Petitioners' inquiries and in complying with the Court's orders, AMS has demonstrated throughout a willingness to cooperate and to obtain the documents sought by Petitioners, to the detriment of AMS's own business functioning, and the Court is satisfied by AMS's explanations for the delays.  Although AMS never filed any papers with the Court, despite being provided the opportunity to do so, the Court, after throughly considering the record, concludes that AMS likely thought it had fulfilled its obligation to comply with the subpoena through its first and second productions on November 29, 2011 and December 15, 2011, respectively, and thus had no need to file opposition papers with the Court when they were due on November 28, 2011 and December 27, 2011.  See Doc. Nos. 3, 6.  In the Court's view, AMS did not fail to follow any court orders until Mr. Seawright sent his January 25, 2012 email to Petitioners'

counsel in lieu of following the directives of the Court's January 13, 2012 order (and was

one day late in doing even that).  Given the complications encountered by AMS in

locating documents responsive to the subpoena because its data retention system did

not segregate agent communications by carrier, and in view of AMS's own business

concerns, as well as the fact that Mr. Seawright represented AMS here in his business

capacity, not as its lawyer, the Court does not find Mr. Seawright to have been in

contempt for proceeding in the manner he did.

The Court is satisfied that there were justifiable reasons that the production of

AMS's documents took longer than anticipated.  Difficulties were encountered during

the course of AMS's multiple searches, including the press of AMS's own business, a

data retention system not conducive to responding to a subpoena involving just one of

many of AMS's insurance clients, the inability to limit the search to certain specified

individuals, and a much more voluminous amount of documents containing the search

terms than expected.  The February 2012 search was also more complicated than

anticipated as the documents were not as easily extractible from AMS's servers as

AMS's information technology employee expected, and because of LSW's unexpected

privilege claim (which was no fault of AMS).  In retrospect, the Court also recognizes

that the February 17, 2012 date for production of the documents located through AMS's

search of its servers, which the Court set after obtaining input from the parties, was

probably too aggressive a date, as it assumed that the search would go smoothly and

that no glitches would be encountered.

In short, although the documents were not produced as quickly as would have

been ideal, the Court finds that AMS did not engage in contumacious behavior of the

type justifying this Court to certify facts to the district judge regarding civil contempt, or

for the Court to require an evidentiary hearing.  The Court therefore declines to make

any findings of contempt by AMS, and **DENIES** Petitioners' motion for an order to show

cause why AMS should not be held in contempt, request for an evidentiary hearing, and

request for the fees and costs expended to enforce AMS's compliance with the

11cv2531

subpoena.

Finally, the Court finds that Petitioners should bear the full cost of the February 2012 search of AMS's servers.  The search of AMS's servers cost $8,850.00 and took over 48 hours to complete, and thus was clearly expensive and burdensome on AMS's business functions.  Rule 45 requires the Court to protect persons subject to a subpoena from significant expense resulting from complying with the subpoena.  <u>See</u> Fed. R. Civ. P. 45(c)(1); Fed. R. Civ. P. 45(c)(2)(B)(ii); <u>In re First American Corp.</u>, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) (observing that Rule 45 permits non-parties to recover discovery costs).  AMS is not a party to the underlying action, and it was Petitioners' broad subpoena (containing 44 categories of documents to be produced) and two pages of broad search terms that resulted in the high cost of the search.  Petitioners have provided no compelling reason or authority to impose the cost of production on AMS.  Therefore, the Court finds that Petitioners should bear the full cost of the February 2012 search of AMS's servers, and **DENIES** Petitioners' request for an allocation of that expense.

**IV.    Conclusion**

For the reasons set forth above, Petitioners' motion for an order to show cause why AMS should not be held in contempt, and request for an evidentiary hearing on AMS's alleged contempt, are **DENIED**.  Therefore, Petitioners' request for the fees and costs expended to enforce AMS's compliance with the subpoena is **DENIED**.  Petitioners' request that AMS be required to bear some or all of the $8,850.00 paid by Petitioners to AMS's computer forensics vendor is **DENIED**.

**IT IS SO ORDERED**.

DATED:  March 9, 2012

Jan M. Adler
U.S. Magistrate Judge

9

11cv2531